IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH YAHOO! E-MAIL ACCOUNT AARONALEXIS2006@YAHOO.COM THAT IS STORED AT PREMISES CONTROLLED BY YAHOO! | Misc. No. _____ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Charles Rooney, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with the e-mail account aaronalexis2006@yahoo.com (hereinafter the "SUBJECT ACCOUNT") that is stored at premises owned, maintained, controlled, or operated by Yahoo!, an e-mail provider headquartered at 701 First Avenue, Sunnyvale, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Yahoo! to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a duly appointed Special Agent of the Federal Bureau of Investigation (FBI), and have been so employed since 2008. As such, I am an "investigative or law enforcement officer of the United States," empowered to make arrests within the meaning of Title 18, Section

3052, of the United States Code, and to execute search warrants and seizures within the meaning of Title 18, Section 3107, of the United States Code, for offenses in which the United States Government is a party of interest. Prior to becoming a special agent, I was employed as a police officer with the Fairfax County Police Department, Fairfax, Virginia, between 2000 and 2008. I am currently assigned to a squad that investigates Violent Crimes out of the FBI's Violent Crimes Task Force within the Washington, D.C., Field Office of the FBI. During my law enforcement career, I have gained knowledge in the use of various investigative techniques, including the execution of search warrants, and the use of physical surveillance, undercover agents, confidential informants and pen registers. I have investigated numerous criminal violations, including bank robberies, armed car robberies, car jackings, and felonious assaults and shootings, which have resulted in arrests and convictions. Through instruction, training, and participation in investigations, as well through consultation with other agents and law enforcement personnel, I have become familiar with the manner and methods by which criminals conduct their illegal businesses during the planning, preparation and execution phases.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of Title 18, United States Code, Sections 1111 (murder), 1113 (attempted murder), and 1114 (killing or attempted killing of officer or employee of United States) have been committed by the individual using the

SUBJECT ACCOUNT (hereinafter "TARGET"). There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### The Shootings and Fatalities

6. On September 16, 2013, at approximately 8:12 am, there was a report of an "active shooter" at the Washington Navy Yard ("Navy Yard"), located in Southwest, Washington, D.C. First Responders with the Naval Criminal Investigative Services ("NCIS") and D.C. Metropolitan Police Department (the "First Responders") responded to Building 197 of the Navy Yard to investigate the reported shooting. Upon arriving, the First Responders discovered multiple victims with visible gunshot wounds throughout Building 197, some of whom were dead and some of whom were injured.

7. NCIS personnel identified a suspected male shooter and exchanged gunfire with that individual inside Building 197. Later, members of the D.C. Metropolitan Police Department's Emergency Response Team arrived at the scene and also exchanged gunfire with the male shooter. In the ensuing gunfire, the male shooter was shot and killed.

8. Special Agents with the FBI's Violent Crimes Task Force came to the scene and scanned the now-deceased male shooter's fingers to obtain his fingerprints. Those fingerprints were then electronically compared against known fingerprints contained in a Criminal Justice Information Services Division database, which resulted in a positive fingerprint comparison to Aaron Alexis, having a date of birth of May 9, 1979, and a last known address in Fort Worth, TX (hereinafter "Alexis").

9. Through various law enforcement databases, the FBI, in coordination with other law enforcement entities, determined that Alexis was an employee of Experts IT, a subcontractor for a defense contracting company of the United States Department of Defense.

10. NCIS members subsequently determined that Experts IT had been providing information technology services at the Navy Yard since approximately Monday, September 9, 2013. It was also determined that Alexis was one of Expert IT's employees assigned to provide those services.

11. In connection with the services being provided by Experts IT to the Navy Yard, Alexis had been issued an access identification badge that allowed Alexis to access the Navy Yard, and Building 197 at the Navy Yard. Further investigation also revealed that the access identification badge issued to Alexis had been used to access the Navy Yard on multiple occasions from September 9 through September 16, 2013. The last time Alexis's access identification badge was used to access Building 197 in the Navy Yard was at approximately 8:02 am on September 16, 2013.

12. In a search of Building 197, law enforcement agents found Alexis's access identification badge on the first floor of that location near a shotgun believed to have belonged to Alexis and to have been used by him in the shooting.

13. Alexis's body was found on the third floor of Building 197. Near his body was a 9mm, semi-automatic pistol, also believed to have been used by him in the shooting. The 9mm semi-automatic pistol was recovered from the crime scene, examined, and determined to be loaded. Also recovered from the crime scene were multiple expended 9mm cartridge casings and shotgun shells, consistent with the firearms found on the scene and believed to have been used by Alexis in the shooting.

14. To date, the investigation has revealed that the shooting at the Navy Yard resulted in thirteen (13) deceased victims, including Alexis, along with multiple other injured victims.

The Subject E-Mail Account

15. FBI agents obtained records from the Navy Federal Credit Union on September 16. These records revealed that Alexis had an account with the Credit Union. The records further revealed that Alexis stated his e-mail address was aaronalexis2006@yahoo.com in registering the account.

16. During the evening of September 16, 2013, FBI agents interviewed Alexis' father, Algernon Bead Alexis, residing in New York, New York. Alexis's father forwarded to the FBI an e-mail he had received on or about September 1, 2013, from Aaron Alexis. The e-mail address from which Alexis sent the e-mail to his father was aaronalexis2006@yahoo.com.

17.     On September 16, 2013, Yahoo! Informed an FBI agent that it would preserve the contents of the email account aaronalexis2006@yahoo.com.

## BACKGROUND CONCERNING YAHOO! AND E-MAIL SERVICE PROVIDERS

18.     In my training and experience, I have learned that Yahoo! provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public. Yahoo! allows subscribers to obtain e-mail accounts at the domain name yahoo.com, like the e-mail accounts listed in Attachment A. Subscribers obtain an account by registering with Yahoo!. During the registration process, Yahoo! asks subscribers to provide basic personal information. Therefore, the computers of Yahoo! are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Yahoo! subscribers) and information concerning subscribers and their use of Yahoo! services, such as account access information, e-mail transaction information, and account application information.

19.     In general, an e-mail that is sent to a Yahoo! subscriber is stored in the subscriber's "mail box" on Yahoo! servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Yahoo! servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Yahoo!'s servers for a certain period of time.

20.     When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Yahoo!'s servers, and then transmitted to its end destination. Yahoo! often saves a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Yahoo! server, the e-mail can remain on the system indefinitely. Even if the

sender deletes the e-mail, it may continue to be available on Yahoo!'s servers for a certain period of time.

21. A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail. If an e-mail user writes a draft message but does not send it, that message may also be saved by Yahoo! but may not include all of these categories of data.

22. A Yahoo! subscriber can also store files, including e-mails, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by Yahoo!

23. Subscribers to Yahoo! might not store on their home computers copies of the e-mails stored in their Yahoo! account. This is particularly true when they access their Yahoo! account through the web, or if they do not wish to maintain particular e-mails or files in their residence.

24. In general, e-mail providers like Yahoo! ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

25. E-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and

durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Yahoo!'s website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

26.    In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

27.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Yahoo! to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

28. Based on the forgoing, I request that the Court issue the proposed search warrant.

Respectfully submitted,

*[signature]*

Charles Rooney
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me on September 17, 2013

*[signature]*

JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with aaronalexis2006@yahoo.com that is stored at premises owned, maintained, controlled, or operated by Yahoo!, a company headquartered at 701 First Avenue, Sunnyvale, California.

## ATTACHMENT B

### Particular Things to be Seized

I.      **Information to be disclosed by Yahoo!**

To the extent that the information described in Attachment A is within the possession, custody, or control of Yahoo!, Yahoo! is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, deleted e-mails, emails preserved pursuant to a request made under 18 U.S.C. § 2703(f), the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

d.  All records pertaining to communications between Yahoo! and any person regarding the account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 1111 (murder), 1113 (attempted murder), and 1114 (killing or attempted killing of officer or employee of United States), including but not limited to:

a.  Records and information, and items related to violations of the aforementioned statutes;

b.  Records, information, and items related to the identity of Aaron Alexis;

c.  Records, information, and items related to the Washington Navy Yard or individuals working or present there;

d.  Records, information, and items related to any targeting of, or planning to attack, the Washington Navy Yard or individuals working or present there, or any records or information related to any past attacks;

e.  Records, information, and items related to the state of mind of Alexis, or any other individuals seeking to undertake any such attack and/or the motivations for the attack;

f.  Records, information, and items related to any organization, entity, or individual in any way affiliated with Alexis;

2

g.      Records, information, and items related to any associates of Alexis or other individuals he communicated with about his planned violent attacks, including the one perpetrated at the Washington Navy Yard on September 16, 2013;

h.      Records, information, and items related to Alexis or his associates' schedule of travel or travel documents;

i.      Records, information, and items related to any firearms or ammunition;

j.      Records, information, and items related to any bank records, checks, credit card bills, account information, and other financial records.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Yahoo! and my official title is _____. I am a custodian of records for Yahoo! I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Yahoo!, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

    b.    such records were kept in the ordinary course of a regularly conducted business activity of Yahoo!, and

    c.    such records were made by Yahoo! as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____
Date    Signature